UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY ZAPPIN,

                    Plaintiff,

            v.                                          **OPINION AND ORDER**

MATTHEW F. COOPER; LAUREN                              20 Civ. 2669 (ER)
LIEBHAUSER; KEVIN M. DOYLE; HANNAH
YU; and JANE DOE,

                    Defendants.

Ramos, D.J.:

       Anthony Zappin brings this action against Justice Matthew Cooper[1] alleging abuse of

process and retaliation.  *See* Docs. 1, 33.[2]  By way of background, the instant action is just one of

sixteen suits Zappin has filed—in state and federal court—against Justice Cooper, New York

State, and other state officials arising out of his divorce, disbarment, and an alleged encounter

with Justice Cooper on a city sidewalk that resulted in Zappin's prosecution for filing a false

police report.  *See* Docs. 69-3, 112.  Zappin has named Justice Cooper as a defendant in ten of

these actions.  *See* Docs. 69-3, 112.

---

[1] The other named defendants are Lauren Liebhauser, Kevin M. Doyle, and Hannah Yu.  The Court dismissed the action *sua sponte* as to Doyle and Yu.  *See* Doc. 18.  Liebhauser and Justice Cooper remain.  On January 11, 2021, Liebhauser filed a motion to dismiss Zappin's first amended complaint.  *See* Doc. 40.  That same day, Justice Cooper filed a motion to dismiss and to strike portions from Zappin's first amended complaint.  *See* Doc. 41.  On July 14, 2021, the Court denied both motions as moot pending the Court's resolution of Zappin's instant motion for leave to file a second amended complaint.  *See* Doc. 91.

[2] Zappin filed fourteen of these suits between April 2015 and June 2020; Zappin filed two other suits in February and March 2022.  The instant motion was fully briefed as of July 9, 2021 and, as such, the parties' briefs only make reference to Zappin's first fourteen suits.  In deciding this motion, however, the Court will consider the two most recent filings as well as the parties' supplemental letters relating to those filings.  *See* Docs. 111, 112, 113.

Before the Court are Justice Cooper's motion for a filing injunction, and Zappin's motion for leave to file a second amended complaint.  For the reasons set forth below, Justice Cooper's motion is GRANTED and Zappin's motion is DENIED.

## I.     BACKGROUND

### a.  The Divorce Action

Zappin, a former attorney and member of the bars of New York, West Virginia, and the District of Columbia, filed for divorce from his then-spouse Claire K. Comfort and for custody of their child in 2014.  It appears to be undisputed that the proceedings can safely be described as acrimonious and were covered extensively by New York City tabloids.[3]  Justice Cooper presided over substantial portions of Zappin's divorce action in Supreme Court, New York County.  Doc. 70 at 2.  In that action, Justice Cooper imposed a $10,000 sanction on Zappin for a "maelstrom of misconduct."  *See Zappin v. Comfort*, 26 N.Y.S.3d 217, 2015 WL 5511519, at *5 (N.Y. Sup. Ct. 2015), *aff'd,* 49 N.Y.S.3d 6 (N.Y. App. Div. 2017).  Among other reasons, Zappin was sanctioned for attempting to subpoena documents from the case file maintained by the attorney for his child and for filing a baseless complaint with the Office of Professional Medical Conduct against a psychiatrist retained as an expert on his child's behalf.  *Id.* at *8–9.  In his sanctions decision, Justice Cooper held that these actions were part of Zappin's ongoing efforts "to undermine the legal process and use his law license as a tool to threaten, bully, and intimidate," and that this behavior "call[ed] into question his fitness to practice law."  *Id.* at *1.  The Appellate Division, First Department, affirmed Justice Cooper's sanctions decision as "entirely proper" and

---

[3] Among the various suits he has filed, Zappin has sued Daily News L.P., NYP Holdings, doing business as *the New York Post*, and reporter Julia Marsh.  *See* Doc 69-3.

"amply supported by the record," and rejected Zappin's claim that he was denied a full and fair opportunity to oppose the sanction. *Zappin*, 49 N.Y.S.3d at 7.

Justice Cooper subsequently presided over a child custody trial in the divorce action. On February 29, 2016, he issued an unpublished decision resolving the custody dispute. The custody decision was incorporated into a final judgment of divorce, dated August 17, 2016, which awarded Comfort sole custody of the child, granted Zappin supervised visitation, granted a five-year stay-away order of protection in Comfort's favor, and required Zappin to pay child support. *See Zappin v. Comfort*, 65 N.Y.S.3d 30 (N.Y. App. Div. 2017) (affirming custody decision), *appeal dismissed*, 102 N.E.3d 1056 (N.Y. 2018).

On appeal, the custody decision was affirmed in all respects. *Id.* The First Department held there was a "sound and substantial basis" to award Comfort sole custody, based in part on Justice Cooper's findings that Zappin had "committed acts of domestic violence against [Comfort], both during her pregnancy with the child and after the child was born, rendering joint custody impossible." *Id.* at 32. The First Department also held there was a "sound and substantial basis" to grant Zappin supervised visitation, including the "evidence that [he] had physically and verbally harmed the child's mother, engaged in abusive litigation tactics, and lacked the emotional restraint and personality to look after the child's best interests." *Id.*

With Comfort's claim for attorneys' fees the only remaining issue in the divorce action, Justice Cooper recused himself, noting that in the interim Zappin had filed three federal lawsuits against him; filed two complaints against him with the New York State Commission on Judicial Conduct, both of which were dismissed as being without merit; and created at least two websites aimed at "smearing [him]." Doc. 70 at 3 (internal citations omitted). Justice Cooper also noted Zappin's "venomous conduct" in sending a "disturbing" email to Justice Cooper's son and

posting a fake online review of a course his son teaches, which stated in part that the instructor's "father is corrupt New York mobster Judge Matthew Cooper." *Id.* (internal citations omitted).

### b. Zappin's Disbarment

Based on Justice Cooper's findings, the Attorney Grievance Committee ("AGC") of the Appellate Division, First Department, charged Zappin with professional misconduct. The charges were approved by Ernest J. Collazo, an attorney in private practice who served as volunteer chairman of the AGC, and were prosecuted by staff attorney Kevin M. Doyle under the supervision of chief attorney Jorge Dopico. On October 17, 2016, the First Department found that Zappin had violated New York Rules of Professional Conduct §§ 3.1, 3.3(a)(1), 3.3(a)(3), 3.3(f)(2), 8.4(c), 8.4(d), and 8.4(h). *See Matter of Zappin*, 73 N.Y.S.3d 182, 186 (N.Y. App. Div. 2018) (citing 22 NYCRR 1240.8 [b] [2]). The court based its findings of misconduct on Justice Cooper's determinations that Zappin:

> had repeatedly perpetrated acts of domestic violence against his wife; had testified falsely at a custody trial; had knowingly introduced falsified evidence during the proceedings in the form of altered text messages; had presented misleading testimony through his expert witnesses; had … engaged in acts that repeatedly demonstrated disrespect for the court and counsel, by, inter alia, flouting the judicial directives of three judges …, setting up a fake website about the attorney for the child by registering her name as a domain name and posting derogatory messages about her on it, and baselessly filing a disciplinary complaint against a court-appointed psychiatric expert witness. Additionally, the Supreme Court found that [Plaintiff] had sent text messages to his wife, an attorney, threatening her with loss of her license to practice law and professional ruin; had made grossly offensive remarks during cell phone conversations with his then three-month-old son in which he baselessly accused his father-in-law of being a child sexual abuser who could harm the child; had engaged in frivolous and abusive litigation against his wife, her parents, and her attorneys; and had attempted to publicly defame the attorney for the child.

*Id.* at 183–84.

The First Department referred the disciplinary matter to a referee to recommend an appropriate sanction. *Id.* at 187. After a hearing, the referee recommended disbarment, citing

Zappin's "lack of remorse and evident lack of respect for the judicial process [as] serious aggravating factors." *Id.* at 184–8.  On March 8, 2019, the First Department ordered Zappin disbarred "to protect the public, maintain the honor and integrity of the profession, or deter others from committing similar misconduct[.]" *Id.* at 188.  That decision held that disbarment was amply justified because Zappin had had a full and fair opportunity to litigate the findings made in the custody trial.  *Id.*  Based on Zappin's disbarment in New York, he was also disbarred in West Virginia on February 18, 2021, and in the District of Columbia on March 21, 2019.  *See* Doc. 69-2.

### c.  The November 2, 2016 Incident

Zappin alleges that on November 2, 2016, while he was walking in lower Manhattan, he passed Justice Cooper and, as they passed, Justice Cooper approached Zappin and spat on him ("the November 2 incident").  Doc. 33 ¶ 14.  That day, Zappin filed a police report at the New York Police Department's First Precinct.  *Id. ¶* 17.  Zappin alleges he "never once requested that the NYPD or the District Attorney's Office prosecute [Justice] Cooper," but instead simply wanted to "document what happened." *Id.* ¶ 18.  At the time of the alleged incident, Justice Cooper was still presiding over the divorce action and was considering several post-judgment motions.  Doc. 70 at 15; Doc. 33 ¶¶ 26-27.

After an investigation of the November 2 incident by Lauren Liebhauser, investigator of the Manhattan District Attorney's Office, Zappin was arrested on March 28, 2017, and arraigned on March 29, 2017, in New York Criminal Court on a charge of falsely reporting an incident in the third degree in violation of N.Y. Penal Law § 240.50.3(a), a Class A misdemeanor.[4]  *See*

---

[4] According to the criminal complaint, a review of video footage revealed that while Justice Cooper and Zappin did pass by each other, they did so "without any encounter or interaction of any kind."  Doc. 43-9 at 1–2.

Docs. 43-10, 43-11.  On September 19, 2017, Zappin pleaded guilty to one count of disorderly

conduct under N.Y. Penal Law § 240.20(1), a violation, in satisfaction of the charge.  *See* Doc.

43-13.

### d.  Zappin's Lawsuits

Since the issuance of the sanctions decision in 2015, Zappin has filed numerous actions

challenging Justice Cooper's rulings in the divorce action, contesting his disbarment, and

accusing Justice Cooper of wrongdoing in connection with the November 2 incident and

Zappin's resulting arrest and criminal prosecution.  Specifically, Zappin has filed eight civil

actions in the Southern District of New York, naming Justice Cooper as a defendant in six of

them, and also has filed one civil action in the Southern District of West Virginia.

In addition to the federal actions, Zappin has also filed five actions arising out of the same

events in the New York Supreme Court, one in the New York State Court of Claims, and one in

West Virginia state court.  Zappin named Justice Cooper as a defendant in four of the five matters

he filed in New York State Supreme Court.

### i.  Federal Actions

Zappin has filed nine federal actions arising out of the divorce action and its

consequences, including his disbarment and the November 2 incident.  First, on July 27, 2016,

Zappin filed suit against Justice Cooper, seeking to hold him liable for transmitting a judicial

opinion in the divorce action that Zappin alleged contained false, malicious, or defamatory

statements about him to purportedly unauthorized recipients.  *See Zappin v. Cooper*, No. 16 Civ.

5985 (KPF) ("Federal Action 1"), Doc. 1.  Zappin asserted a number of claims including

defamation, intentional infliction of emotional distress, and tortious interference with prospective

economic advantage.  *See id.*  On November 8, 2016—six days after the November 2 incident—

Zappin amended his complaint to allege that Justice Cooper spat on him on the street, and cited the November 2 incident in support of his claim alleging intentional infliction of emotional distress.  *See* Federal Action 1, Doc. 26 ("First Amended Complaint" or "FAC").

On February 2, 2018, Judge Failla dismissed Zappin's FAC with prejudice, finding his claims barred by collateral estoppel.  *See* Federal Action 1, Doc. 57.  Zappin then moved for reconsideration and also wrote that he intended to file a motion to request that Judge Failla recuse from the matter.  Federal Action 1, Docs. 59, 63.  Zappin never filed his motion for recusal, and Judge Failla denied his motion for reconsideration.  Federal Action 1, Doc. 67.  Several months after Judge Failla denied Zappin's motion, he wrote that he intended to file a motion requesting document discovery from Judge Failla to "determine the extent of [her] conflict of interest" and seek her disqualification.  Federal Action 1, Doc. 71 at 1.  Judge Failla declined to produce any documents, writing there is "no basis for discovery from this Court[.]" Federal Action 1, Doc. 72 at 4.

Next, Zappin filed two federal actions relating to allegedly defamatory statements made in articles reporting on his divorce proceedings, both of which were assigned to Judge Failla as related to his earlier-filed federal suit:  *Zappin v. Daily News, L.P.*, No. 16 Civ. 8762 (KPF) ("Federal Action 2") and *Zappin v. NYP Holdings, Inc.*, No. 16 Civ. 8838 (KPF) ("Federal Action 3").  He filed Federal Action 2 on November 10, 2016 against Daily News LP and Justice Cooper.  And he filed Federal Action 3 on November 14, 2016 against NYP Holdings Inc., reporter Julia Marsh, and Justice Cooper.  Zappin voluntarily dismissed both actions against Justice Cooper.  *See* Federal Action 2, Doc. 21; Federal Action 3, Doc. 21.

On August 9, 2017, Judge Failla dismissed Federal Action 2, finding the article at issue was a "fair and true report" of the divorce proceedings and related judicial documents and was

not defamatory.  *See* Federal Action 2, Doc. 32 at 21.  And on March 26, 2018, Judge Failla

dismissed Federal Action 3 for the same reason.  *See* Federal Action 3, Doc. 46 at 15, 21–22.  In

Federal Action 3, Zappin again requested document discovery from Judge Failla, *see* Doc. 52,

and she again declined to produce any documents.  *See* Federal Action 3, Doc. 53.

On November 14, 2017, Zappin brought another federal action, and amended his

complaint shortly thereafter, on November 20, 2017.  *See Zappin v. Doyle*, No. 17 Civ. 8837

(KPF) ("Federal Action 4"), Docs. 1, 28.  Broadly speaking, his 375-page complaint alleged

constitutional violations and common-law tort claims stemming from his divorce proceedings

and related criminal and disciplinary matters.  *See id.*  Zappin named as defendants Collazo and

Doyle—volunteer chairman and prosecutor, respectively, of the AGC; New York State Justices

Deborah Kaplan, Ronaldo Acosta, and Peter Moulton; Justice Lawrence Marks, Chief

Administrative Judge for the Office of Court Administration in the New York Unified Court

System; Robert Tembeckjian, Administrator and Counsel of the New York Commission on

Judicial Conduct; Justice Cooper; Liebhauser; and Cyrus Vance, Manhattan District Attorney.

*See id.*  Zappin voluntarily dismissed Justice Cooper, Liebhauser, and Vance on April 6, 2018.

Federal Action 4, Doc. 93.

In November and December 2017, Zappin filed a number of letters and motions in

Federal Action 4 seeking a temporary restraining order, *see* Docs. 37, 51, and preliminary

injunction, *see* Docs. 29–31, to halt the attorney disciplinary proceeding against him in state

court.  Judge Failla denied these applications.  *See* Federal Action 4, Docs. 49, 54, 81.

On April 10, 2018, Judge Failla dismissed Federal Action 4 with prejudice as a sanction

for Zappin's "persistent disregard of its orders."  *Zappin v. Doyle*, No. 17 Civ. 8837 (KPF), 2018

WL 2376502, at *5 (S.D.N.Y. Apr. 10, 2018), *aff'd*, 756 F. App'x 110 (2d Cir. 2019).

Specifically, Judge Failla found Zappin repeatedly ignored Court-imposed deadlines and flouted

multiple Court orders "over a period of months and with abiding disdain for the Court and its

orders." *Id.* at *6–8.  Judge Failla noted "the Court has no reason to believe that [Zappin] will

ever view this Court's' orders and deadlines as binding on him." *Id.* at *6.  As such and because

neither a monetary sanction nor professional discipline would deter Zappin's conduct, Judge

Failla found:

> [T]he Court does not believe that it can afford Plaintiff his right to be heard on the merits without doing considerable violence to the Court's right to have its orders followed and to the State Defendants' rights to know the claims brought against them and to mount a fully-informed defense.  To control the cases that come before it, the Court is given broad discretion to issue orders and, when those are disobeyed, to impose sanctions.  Having no ability to ensure compliance with the former going forward, the Court now resorts to the latter.  To be clear, it does not do so lightly.  The Court has admonished Plaintiff about the importance of abiding by its orders; it has given Plaintiff several "second chances"; and it has tried without success to construct an alternative to this dismissal.  On the record before it, the Court is confident that giving further opportunities to Plaintiff to abide by its orders will be met only with Plaintiff's continued misconduct.  This case is dismissed.

*Id.* at *9.

On April 26, 2019, and November 14, 2019, Zappin filed two more federal actions in this

District which were assigned to Judge Schofield:  *Zappin v. Collazo*, No. 19 Civ. 3781 (LGS)

("Federal Action 5") and *Zappin v. Dopico*, No. 19 Civ. 10573 (LGS) ("Federal Action 6").  He

brought these related actions against Collazo and Dopico, the chief attorney of the AGC.  Judge

Schofield dismissed both cases in a single opinion on September 22, 2020.  *See* Federal Action 5,

Doc. 61; Federal Action 6, Doc. 37.  Judge Schofield found Zappin's case against Collazo was

barred by *res judicata*, and dismissed Zappin's case against Dopico on standing and *res judicata*

grounds as well as for failure to state a claim.

In these cases, as Judge Schofield wrote, Zappin "successively violated Court Orders,"

including by missing a number of Court-imposed deadlines, and "cost both Defendants and the

9

Court needless time[.]"  Federal Action 5, Doc. 58; Federal Action 6, Doc. 29.  As Judge

Schofield continued, Zappin's conduct "has been dilatory and disrespectful of Court Orders and

the parties' time." *Id.*  She advised that any further failure to comply would result in sanctions.

*Id.*

Zappin filed the instant action on March 31, 2020.  *See Zappin v. Cooper*, No. 20 Civ.

2669 (ER) ("Federal Action 7").  On August 17, 2020, the Court directed service upon Justice

Cooper and Liebhauser and dismissed the action *sua sponte* as to Doyle and two other

defendants.  Doc. 18.  The amended complaint, filed November 18, 2020, asserts four claims

under 42 U.S.C. § 1983:  (1) abuse of process, (2) conspiracy to abuse process, (3) retaliation for

Zappin's criticism of Justice Cooper, in violation of his First Amendment rights, and (4)

conspiracy to retaliate.  *See* Doc. 33.

Specifically, Zappin alleges Justice Cooper used his position on the bench to "induce and

instigate" the Manhattan District Attorney's Office to bring a "bogus" investigation and

prosecution of a "wholly baseless and frivolous misdemeanor criminal charge;" that he did so to

retaliate against him; and that Liebhauser conspired with Justice Cooper.  *Id.* ¶¶ 1,7.  In other

words, Zappin claims his arrest and prosecution for filing a false police report resulted from a

conspiracy to "manufacture a retaliatory criminal case" against him.  *See id.* ¶ 20.

Justice Cooper moved to dismiss the action and to strike certain allegations from the

amended complaint.[5]  *See* Doc. 41.  The motion set forth four grounds for dismissal:  the statute

of limitations; *res judicata* based on dismissal with prejudice of Federal Action 1; absolute

judicial immunity; and failure to state a claim.  *See* Doc. 42.  Justice Cooper's motion to dismiss

---

[5] Justice Cooper's motion to dismiss was denied as moot pending the Court's resolution of Zappin's instant motion
for leave to file a second amended complaint.  *See supra* Note 1.

was fully submitted on March 9, 2021, *see* Doc. 54, and on May 26, 2021, Justice Cooper moved for a filing injunction.  *See* Doc. 68.  The instant motion—for a filing injunction—was fully submitted on July 9, 2021.  *See* Doc. 90.

In February and March 2022, Zappin filed two more federal suits—despite asserting in his opposition to Justice Cooper's motion that he had no intention of filing any new lawsuits. *See* Doc. 83 at 22–23.  On February 16, 2022, Zappin brought suit against Doyle, Dopico, and others in the Southern District of West Virginia, challenging his disbarment in West Virginia. *See Zappin v. Ramey*, S.D. W. Va., No. 3:22 Civ. 00080 (RCC) (CAE) ("Federal Action 8"). And on March 15, 2022, Zappin brought suit in this Court against Justice Cooper, Doyle, and David Evan Schorr, who represented Zappin in part of his divorce proceedings, alleging claims of racketeering, fraud, tortious interference with parental rights, and abuse of process.  *See Zappin v. Schorr*, No. 22 Civ. 2034 (ER) (JLC) ("Federal Action 9").  Specifically, Zappin alleges that Schorr sought to undermine Zappin's position and defenses throughout the divorce proceedings in an attempt to harm and defraud him and that all defendants participated in a scheme to engineer Zappin's criminal prosecution and disbarment.  *See* Federal Action 9, Doc. 2 at 32–38.

### ii.  State Actions

Zappin has also filed a number of state actions relating to the divorce proceeding and its consequences.  *See* Doc. 69-3.  Specifically, in 2015, Zappin sued the State of New York in the New York State Court of Claims, alleging he was assaulted by a court officer during the divorce proceeding; after filing the claim and serving discovery demands and subpoenas, Zappin withdrew the claim.  *See Zappin v. State of New York*, Claim No. 126063.  Between 2017 and 2020, Zappin filed five actions in Supreme Court, New York County:  *Zappin v. Cooper*, No.

151862 (2017); *Zappin v. Comfort*, No. 152822 (2017); *Zappin v. Comfort*, No. 156083 (2018);

*Matter of Zappin v. Office of Court Admin.*, No. 154785 (2019); *Zappin v. Cooper*, No. 154016

(2020). *See* Doc. 69-3. Justice Cooper is a named defendant in four of these state actions.

In one of these Supreme Court actions, *Zappin v. Comfort*, No. 152822, Zappin filed and

served a summons with notice and thereafter sought discovery; but the court denied his motion

and dismissed the action because Zappin failed to comply with Justice Cooper's demand that he

serve a complaint. *See* Doc. 70 at 7. The remaining Supreme Court Actions, whether

commenced by summons and complaint or summons with notice, were not served on Justice

Cooper. *See id.*

In 2018, Zappin also filed an action relating to his disbarment in West Virginia State

Court. *See In re Zappin v. Doyle*, Cabell Cnty. Magistrate Ct., W. Va., No. 18S-55. Zappin later

withdrew this action. *See id.*

In sum, as set forth above, Zappin has filed a total of sixteen suits relating to his divorce

proceeding, subsequent disciplinary proceedings and disbarment, the November 2 incident, and

his ensuing prosecution for filing a false police report, and has named Justice Cooper as a

defendant in ten of these. As a result, Justice Cooper moves to enjoin Zappin from filing,

without leave of the Court, any new civil actions in the Southern District of New York against

him, New York State, or any other state judge, official, or employee, arising out of Zappin's

divorce action, the disciplinary proceeding that led to Zappin's disbarment, the November 2

incident, or his resulting arrest and prosecution. Doc. 70 at 1.

## II.    LEGAL STANDARD

It is well settled that "courts may resort to restrictive measures that except from normally

available procedures litigants who have abused their litigation opportunities." *In re Martin-*

*Trigona*, 9 F.3d 226, 228 (2d Cir. 1993).  A court's power to restrict the litigation of abusive and vexatious litigants is an "ancient one" that is now codified at 28 U.S.C. § 1651(a), the All Writs Act.  *Polur v. Raffe*, 912 F.2d 52, 57 (2d Cir. 1990) (quoting *In re Hartford Textile Corp.*, 681 F.2d 895, 897 (2d Cir. 1982) (per curiam)).

Indeed, a "district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation." *Abdullah v. Gatto*, 773 F.2d 487, 488 (2d Cir. 1985).  Therefore, the Second Circuit has held that "[t]he issuance of a filing injunction is appropriate when a plaintiff abuses the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive proceedings." *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (internal quotation marks and citation omitted).

In determining whether Zappin's behavior merits a filing injunction the Court examines five factors:

    (1)  The litigant's history of litigation and in particular whether it entailed vexatious, harassing, or duplicative lawsuits;

    (2)  The litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of prevailing?

    (3)  Whether the litigant is represented by counsel;

    (4)  Whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and

    (5)  Whether other sanctions would be adequate to protect the courts and other parties.

*Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986).  Ultimately, the question is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties.  *Id.*

III.     DISCUSSION

a.  Filing Injunction

Each of the *Safir* factors counsels in favor of an injunction.  First, Zappin's litigation

against Justice Cooper and other New York State judges and officials has been vexatious,

harassing, and meritless.  As stated, Zappin has filed sixteen suits relating to his divorce

proceeding, subsequent disciplinary proceedings and disbarment, the November 2 incident, and

his ensuing prosecution for filing a false police report, and has named Justice Cooper as a

defendant in ten of these.[6]

Beyond their sheer number, Zappin, as Justice Cooper argues, has litigated these cases in

a vexatious and harassing manner, imposing substantial burdens on the courts, the defendants,

and their counsel, and pursuing his claims in a dilatory and disrespectful manner.  *See Zappin*,

2018 WL 2376502, at *9; Federal Action 5, Doc. 58; Federal Action 6, Doc. 29.  Specifically, as

set out above, Zappin repeatedly defied court orders and deadlines in Federal Action 4, Federal

Action 5, and Federal Action 6; sought to take document discovery from Judge Failla in Federal

Actions 1, 3, and 4, as a way to seek her disqualification; filed meritless letters and motions

seeking a temporary restraining order and preliminary injunction in Federal Action 4 and, in so

---

[6] In his opposition, Zappin writes that he has only pursued two suits against Justice Cooper in this Court.  Zappin
notes he did not name Justice Cooper as a defendant in Federal Actions 5 and 6, and voluntarily dismissed Federal
Actions 2, 3, and 4 as to Justice Cooper.  *See* Doc. 83 at 12-18.  And, as to his state suits, Zappin asserts that Justice
Cooper has "never had to defend any of these lawsuits as they were never served."  *Id.* at 18.  These arguments are
unavailing.  It is beside the point that Zappin voluntarily dismissed Justice Cooper from certain of these actions—
especially given that in Federal Action 4, as an example, Zappin waited for several months before dismissing Justice
Cooper.  *See* Federal Action 4, Doc. 93. These dismissals do not change the fact that Zappin had filed seven federal
actions—all arising out of the divorce proceeding—at the time the instant motion was fully submitted, let alone the
two subsequent federal actions Zappin filed in February and March of this year (one of which names Justice Cooper
as a defendant).  In any event, Zappin does not cite any law showing that the Court, in considering whether Zappin's
history of litigation has been vexatious, should ignore cases where one defendant has been dismissed or has not been
named.  As Justice Cooper rightly points out, the Second Circuit has expressly considered the *totality* of a litigant's
filings, state and federal, when affirming injunctions barring the filing of new actions in federal court.  *See, e.g.*,
*Iwachiw v. New York State Dep't of Motor Vehicles*, F.3d 525, 529 (2d Cir. 2005).

doing, sought to circumvent Judge Failla's individual practices; and voluntarily dismissed claims without prejudice and then refiled them in new actions against the same defendants, *see, e.g.,* Federal Actions 5 and 6.

Moreover, Zappin's suits are duplicative.  At the outset, the Court notes that the common core of all Zappin's suits is the divorce proceeding.  As Justice Cooper makes plain, the divorce action "was the starting point for all subsequent interactions between [Zappin] and Justice Cooper and gave rise to [Zappin's] subsequent complaints against him."  Doc. 70 at 15.  In particular, the divorce proceeding resulted in the imposition of sanctions on Zappin, a rash of negative publicity, and the loss of Zappin's position as a highly-paid law firm associate.  *Id.*  It also led to Zappin's disbarment in three jurisdictions.  And, at the time of the November 2 incident, Justice Cooper was still presiding over the divorce proceeding.  And Zappin alleges that Justice Cooper, motivated by ill will resulting from the divorce proceeding, engineered Zappin's prosecution on a charge of filing a false police report about that incident.  In other words, all of Zappin's cases arise out of the same series of underlying events.

In addition, Zappin's claims against justice Cooper in his defamation actions against *The Daily News* and *The New York Post* (Federal Actions 2 and 3) were virtually identical, as were his claims against two state bar disciplinary officials (Federal Actions 5 and 6).  And three of Zappin's prior federal actions were dismissed on grounds of collateral estoppel (Federal Action 1) or *res judicata* (Federal Actions 5 and 6), which further evidences Zappin's tendency to recycle and relitigate claims and issues relating to his divorce.

At bottom, Zappin's years-long history of filing suit again and again against the same set of actors for the same series of events—and, in so doing, displaying little respect for courts and their orders and deadlines—counsels in favor of a filing injunction.

Second, it is clear that Zappin does not have any intention on molding his litigation strategy so that he has some chance of success.  Zappin filed a number of state court actions only to abandon those cases when he failed to serve them.  *See supra* Section I(d)(ii).  As to his federal actions, Zappin's lack of investment in the success of his suits is evidenced by his repeated flouting of court-imposed deadlines, successive failures to abide by court orders, and generally dilatory conduct.  *See Zappin*, 2018 WL 2376502, at *6-9; *see also* Federal Action 5, Doc. 58; Federal Action 6, Doc. 29.  In particular, in Federal Action 4, Zappin again and again missed deadlines to amend his complaint—where amendment might help to cure and to advance his arguments—even after being offered several "second chances."  *See Zappin*, 2018 WL 2376502, at *9.  In Federal Actions 5 and 6, Zappin missed several deadlines to oppose a motion to dismiss and, as a result, the motion was deemed unopposed.  Federal Action 5, Doc. 58; Federal Action, 6, Doc. 29

Zappin's favored method of pushing forward litigation—filing new lawsuits—does not evince any ability to adopt his strategy to account for rulings of other courts.  *See Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 715 (2d Cir. 2019), *cert. denied sub nom. Weisskopf v. Jewish Agency for Israel*, 140 S. Ct. 380 (2019) ("The dismissal of similar, if not identical, prior actions underscores that both [plaintiffs] had little, if any, good faith basis for believing they could prevail on their claims.")

Six of Zappin's prior federal actions were dismissed with prejudice, including on grounds of *res judicata* and collateral estoppel and for lack of subject matter jurisdiction (the instant case remains pending as do the two most recent federal cases, filed only a few weeks ago). Specifically, those actions were dismissed on grounds of collateral estoppel (Federal Action 1); failure to state a claim (Federal Actions 2 and 3); as a sanction for Plaintiff's persistent defiance

of court orders (Federal Action 4); *res judicata* (Federal Action 5); and for lack of Article III standing, *res judicata*, and failure to state a claim (Federal Action 6).  And, Justice Cooper has moved to dismiss the instant case based on the statute of limitations, *res judicata*, absolute judicial immunity, and for failure to state a claim.  *See* Doc. 42.  In other words, other courts have dismissed with prejudice Zappin's prior actions, all of which arise out of the same set of facts.

Zappin claims he suffered great harm and damages as a result of Justice Cooper's conduct—namely, allegedly engineering criminal charges against Zappin and facilitating his disbarment.  Doc. 83 at 5.  As such, Zappin explains he is merely seeking redress for these harms.  But this claim is belied by Zappin's repeated failures to advance his claims, and Zappin—based on those failures—can no longer show that he has an "objective good faith expectation" of prevailing on his claims relating to the divorce proceeding and its consequences. *Iwachiw*, F.3d at 528.

Third, Zappin's status as a *pro se* litigant does not grant him the "special solicitude" courts normally extend to plaintiffs proceeding without counsel.  *Eliahu*, 919 F.3d at 715. Zappin is an experienced litigator with a degree from Columbia Law School and experience as an associate at several prominent law firms.  *See* Doc. 70 at 17; *see also Zappin v. Doyle*, 756 F. App'x 110, 111 n.1 (2d Cir. 2019); *Zappin v. Collazo*, No. 19 Civ. 3781 (LGS), 2020 WL 5646496, at *4 (S.D.N.Y. Sept. 22, 2020).

Fourth, Zappin's litigation has caused Justice Cooper and the other state judges and officials he has repeatedly sued to incur great expenses of time, resources, and energy in defending against his claims.  It has also imposed substantial and continuing burdens on the courts.  Each of the sixteen suits Zappin has filed since 2015 has required processing by the

relevant clerk's staff, evaluation by defendants' counsel, and consideration by the presiding judges. *See, e.g.*, *Banks-Gervais v. Bd. of Elections*, No. 18 Civ. 5252 (RJD) (VMS), 2018 WL 10070504, at *3 (E.D.N.Y. Sept. 28, 2018) ("Every paper [he has] filed with the Clerk of this Court, no matter how repetitious or frivolous, require[d] some portion of the institution's limited resources." (quoting *In re McDonald*, 489 U.S. 180, 184 (1989))).

As Justice Cooper points out, "at least three courts have commented on [Zappin's] wasteful and harassing tactics." Doc. 70 at 17. In Federal Action 4, Judge Failla found Zappin repeatedly ignored Court-imposed deadlines and flouted multiple Court orders "over a period of months and with abiding disdain for the Court[.]" *Zappin*, 2018 WL 2376502, at *6–8. Judge Failla also noted that "the Court has no reason to believe that [Zappin] will ever view this Court's orders and deadlines as binding on him," and she did not believe she could afford him the right to be heard on the merits "without doing considerable violence to the Court's right to have its orders followed and to the State Defendants' rights to know the claims brought against them and to mount a fully-informed defense." *Id.* at *6, 9.

In dismissing Federal Action 4 as a sanction for Zappin's repeated conduct, Judge Failla made clear that while she had admonished Zappin for his failure to abide by court orders and given him several "second chances," she had no ability to ensure compliance with future court orders and was confident that any further opportunities to comply would be met only with "continued misconduct." *Id.* at *9.

In Federal Actions 5 and 6, Judge Schofield found that Zappin had successively violated Court Orders [and] cost both Defendants and the Court needless time," and that his conduct had been "dilatory and disrespectful of Court Orders and the parties' time." *See* Federal Action 5, Doc. 58; Federal Action 6, Doc. 29.

And, in its decision disbarring Zappin, the First Department affirmed Justice Cooper's finding that Zappin "had engaged in frivolous and abusive litigation against his wife, her parents, and her attorneys; and had attempted to publicly defame the attorney for the child." *Matter of Zappin*, 73 N.Y.S.3d at 184.

Rather than inching him closer to some relief, Zappin's actions have only served to consume the time and resources of the named defendants and the courts. *See Eliahu*, 919 F.3d at 715.

Fifth, there are no other sanctions available that would protect the courts and other parties. As Justice Cooper explains, neither the $10,000 monetary sanction he imposed in 2015 nor Judge Failla's dismissal of Federal Action 4 as a sanction for Zappin's repeated flouting of court orders has deterred Zappin's conduct. As Judge Failla noted in determining dismissal with prejudice was an appropriate sanction,

> A monetary sanction will likewise fail to deter Plaintiff's conduct. Justice Cooper sanctioned Plaintiff in the amount of $10,000 during Plaintiff's matrimonial proceeding and yet he persists in violating court orders. The Court cannot conceive of an amount that would have an effect on Plaintiff's behavior. And in light of the disbarment proceedings that are at the heart of this litigation, the Court did not think it proper to consider professional discipline.

*Zappin*, 2018 WL 2376502, at *9.

Beyond this, although Zappin vowed in June 2021 that he had "no plans for future litigation in this Court" and, indeed, "no intention of filing *any* new lawsuits," *see* Doc. 83 at 22–23 (emphasis added),[7] he nonetheless filed two new federal suits, again relating to his divorce proceeding and its consequences, in February and March 2022. *See* Federal Actions 8 and 9. As

---

[7] Specifically, Zappin argued that a filing injunction would be inappropriate and would prejudice him *because* he had no intention of filing any new lawsuits. Doc. 83 at 23.

such, it is clear that no other sanction would be adequate to protect the courts and parties involved and that a filing injunction is appropriate.

As to the scope of the injunction, Justice Cooper argues that this Court has authority to issue an injunction barring new actions relating to previously litigated events, without regard to the defendants' identity and, in support, cites to a number of cases where the Second Circuit affirmed such injunctions.  *See, e.g.*, *Vassel v. Firststorm Properties. 2 LLC*, 750 F. App'x 50, 52–53 (2d Cir. 2018) (affirming in part the district court's entry of a filing injunction, and finding that an injunction prohibiting plaintiff from filing certain lawsuits without leave of court was appropriate); *George v. New York State Div. of Parole*, 685 F. App'x 30, 31 (2d Cir. 2017) (affirming district court's entry of a filing injunction prohibiting petitioner from filing future motions in his habeas action without leave of court, after the petitioner filed five duplicative motions); *Brady v. Goldman*, 714 F. App'x 63, 64–65 (2d Cir. 2018) (affirming district court's entry of a filing injunction barring plaintiff from filing without leave of court any case arising out of the same underlying facts); *Vidurek v. Koskinen*, 789 F. App'x 889, 895 (2d Cir. 2019) (finding no abuse of discretion in district court's entry of a filing injunction, even where plaintiffs were *pro se*); *Hamilton v. Mark IV Indus., Inc.*, 615 F. App'x 710, 711–12 (2d Cir. 2015) (affirming district court's judgment enjoining plaintiff from filing lawsuits related to her employment or her employer's bankruptcy proceedings); *Azkour v. Maucort*, No. 11 Civ. 5780 (RJS), 2018 WL 1441366, at *2 (S.D.N.Y. Mar. 21, 2018) (barring plaintiff from filing any new action arising from his employment "against Defendants or their associates"); *Boothe v. Rossrock Funds II LP*, No. 16 Civ. 900 (PKC), 2017 WL 2271360, at *11 (E.D.N.Y. May 23, 2017) (barring plaintiff from filing any new actions that "relate[], in any way," to disputed real property); *Ranasinghe v. Kennell*, No. 16 Civ. 2170 (JMF), 2017 WL 384357, at *5 (S.D.N.Y.

Jan. 25, 2017) (barring plaintiff from filing "future actions relating to, or arising from" issues connected to his prior lawsuit "against any party and in any court"), *aff'd*, 718 F. App'x 82 (2d Cir. 2018).

The Court concludes that an injunction barring Zappin, without leave of Court, from filing any new actions in the Southern District of New York against Justice Cooper, the State of New York, any New York State entity or agency, or any other current or former New York State judge, official, or employee arising out of the divorce proceeding, disciplinary proceeding, November 2 incident, or resulting arrest and prosecution falls comfortably within the bounds of injunctions that the Second Circuit has upheld.

### b.  Leave to File Second Amended Complaint

In his proposed second amended complaint, Zappin brings nine claims, all related to the criminal charge that resulted in his arrest for filing a false police report.  *See* Doc. 71-1.  As stated above, Zappin was arraigned in New York Criminal Court on March 29, 2017 on a charge of falsely reporting an incident in the third degree in violation of N.Y. Penal Law § 240.50.3(a), a Class A misdemeanor.  *See* Doc. 43-10.  And on September 19, 2017, Zappin pleaded guilty to one count of disorderly conduct under N.Y. Penal Law § 240.20(1), a violation.  *See* Doc. 43-13.

Zappin's proposed claims are:  (1) abuse of process under 42 U.S.C. § 1983, (2) conspiracy to abuse process under § 1983, (3) abuse of process under state law, (4) conspiracy to abuse process under state law, (5) retaliation for exercising free speech under § 1983, (6) conspiracy to retaliate for exercising free speech under § 1983, (7) conspiracy to use bail as punishment without due process under § 1983, (8) *prima facie* tort under state law, and (9), conspiracy to commit a *prima facie* tort under state law.  *See* Doc. 71-1.  All these claims stem

from Zappin's overarching allegation that Justice Cooper and Liebhauser conspired to bring false criminal charges against him as means of retaliating against him.

"When a Section 1983 plaintiff . . . pleads guilty to the underlying or a lesser charge, th[is] fact[ ] *alone* provide[s] sufficient evidence that probable cause existed at the time of the arrest and preclude[s] a false arrest claim under Section 1983." *Feurtado v. Gillespie,* No. 04 Civ. 3405 (NG) (GLB), 2005 WL 3088327, at *4 (E.D.N.Y. Nov. 17, 2005) (citations omitted); *see also McLaurin v. New Rochelle Police Officers,* 439 F. App'x. 38, 39 (2d Cir. 2011) ("An independent review of the record confirms that the district court properly granted summary judgment . . . with respect to the § 1983 false arrest claims, on the ground that Appellant's conviction established probable cause for the arrest as a matter of law." (citing *Cameron v. Fogarty,* 806 F.2d 380, 388–89 (2d Cir.1986))). "One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Heck v. Humphrey,* 512 U.S. 477, 484 (1994) (citations omitted).

Courts in this Circuit have specifically found that an individual granted an adjournment in contemplation of dismissal of their state prosecution pursuant to N.Y. Crim. P. Law § 170.55—that is, a more favorable outcome than the violation to which Zappin pleaded—cannot maintain a § 1983 action for false arrest or malicious prosecution. *See Mediavilla v. City of New York*, 259 F. Supp. 3d 82, 104 (S.D.N.Y. 2016) (citing *Hines v. Port Auth. of N.Y. & N.J.*, No. 94 Civ. 5109 (NRB), 2000 WL 420555, at *5 (S.D.N.Y. Apr. 18, 2000)); *see also Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir. 1980) ("[I]t is well-settled that an accused, in order to maintain a cause of action for malicious prosecution, must establish that the state prosecution terminated in his favor[.]") The *Mediavilla* court specifically found that the plaintiff's malicious

prosecution claim failed as a matter of law, because the adjournment in contemplation of
dismissal of his arrest for disorderly conduct under N.Y. Penal Law § 240.20 was not a
resolution of the state prosecution in his favor under *Singleton*.  259 F. Supp. at 104.

The same bar applies to malicious prosecution claims brought under state law.  *See
Bennet v. New York City Hous. Auth.*, 665 N.Y.S.2d 91, 92 (N.Y. App. Div. 1997) (collecting
cases); *see also Broughton v. State*, 335 N.E.2d 310, 314 (N.Y. 1975) ("The elements of the tort
of malicious prosecution [include] . . . the absence of probable cause for the criminal
proceeding." (citation omitted)); *Hollender v. Trump Vill. Co-op., Inc.,* 448 N.E.2d 432, 435
(N.Y. 1983) ("[O]nly when the final disposition is such as to indicate innocence" is the burden
met to show that proceedings terminated in favor of the accused. (internal quotation marks and
citations omitted)).

Therefore, as Zappin pleaded guilty to a violation as a result of his arrest on March 28,
2017, he is barred as a matter of law from bringing claims for false arrest under § 1983 and the
applicable state causes of action.

As such, any amendment would be futile, and Zappin's motion for leave to file a second
amended complaint is denied.

## IV.    CONCLUSION

For the reasons set forth above, Justice Cooper's motion for a filing injunction is
GRANTED and Zappin is therefore enjoined from filing, without leave of Court, any new
actions in the Southern District of New York against Justice Cooper, the State of New York, any
New York State entity or agency, or any other current or former New York State judge, official,
or employee arising out of the divorce proceeding, disciplinary proceeding, November 2
incident, or resulting arrest and prosecution.

Zappin's motion for leave to file a second amended complaint is DENIED.  The parties are directed to appear for a conference on April 28, 2022 at 11:00 AM.  The parties are instructed to call (877) 411-9748 and dial access code 3029857# when prompted.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 68 and 71.

It is SO ORDERED.

Dated:   March 31, 2022
         New York, New York

_____
                Edgardo Ramos, U.S.D.J.