UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY ZAPPIN,

                Plaintiff,

                v.

MATTHEW F. COOPER; LAUREN
LIEBHAUSER; KEVIN M. DOYLE; HANNAH
YU; and JANE DOE,

                Defendants.

**OPINION & ORDER**

20-cv-2669 (ER)

Ramos, D.J.:

       Anthony Zappin, a disbarred attorney proceeding *pro se*, brought this action against various New York State officials alleging abuse of process and retaliation. *See* Docs. 1, 33. The instant action is just one of at least sixteen suits that Zappin has filed—in state and federal court—against Justice Cooper, New York State, and other state officials arising out of his divorce, disbarment, and an alleged encounter with Justice Cooper that resulted in Zappin's criminal prosecution for filing a false police report. *See* Docs. 69-3, 112. Zappin has named Justice Cooper as a defendant in at least ten of these actions. *See* Docs. 69-3, 112.

       Before the Court is (1) Zappin's motion to reconsider the Court's March 2020 Opinion & Order granting Justice Cooper's motion for a filing injunction and denying Zappin's motion for leave to file a second amended complaint, Doc. 120, and (2) Zappin's motion for recusal of the undersigned, Doc. 124. For the reasons set forth below, Zappin's motions are DENIED.

## I.    BACKGROUND

       The facts underlying this action are discussed in detail in the Court's March 31, 2022, Opinion and Order. *Zappin v. Cooper*, No. 20 Civ. 2669, 2022 WL 985634 (S.D.N.Y. Mar. 31, 2022). They are largely reproduced here for context in light of Zappin's pending motions.

### a. The Divorce Action

Zappin, a former attorney and member of the bars of New York, West Virginia, and the District of Columbia, filed for divorce from his former spouse, Claire K. Comfort, and for custody of their child in 2014. The proceedings were acrimonious and covered extensively by New York City tabloids.

Justice Cooper presided over substantial portions of Zappin's divorce action in Supreme Court, New York County. Doc. 70 at 2. In that action, Justice Cooper imposed a $10,000 sanction on Zappin for a "maelstrom of misconduct." *See Zappin v. Comfort*, 26 N.Y.S.3d 217, 2015 WL 5511519, at *5 (N.Y. Sup. Ct. 2015), *aff'd*, 49 N.Y.S.3d 6 (N.Y. App. Div. 2017). Among other reasons, the court sanctioned Zappin for attempting to subpoena documents from the case file maintained by the attorney for his child, and for filing a baseless complaint with the Office of Professional Medical Conduct against a psychiatrist retained as an expert. *Id.* at *8–9. In the court's sanctions decision, Justice Cooper held that Zappin's actions were a part of his ongoing efforts "to undermine the legal process and use his law license as a tool to threaten, bully, and intimidate," and that this behavior "call[ed] into question his fitness to practice law." *Id.* at *1.

The Appellate Division, First Department, affirmed Justice Cooper's sanctions decision as "entirely proper" and "amply supported by the record," and it rejected Zappin's claim that he was denied a full and fair opportunity to oppose the sanction. *Zappin*, 49 N.Y.S.3d at 7.

Justice Cooper subsequently presided over the child custody trial in Zappin's divorce action. On February 29, 2016, he issued a decision resolving the custody dispute. The custody decision was incorporated into a final judgment of divorce, which awarded Comfort sole custody of the child, granted Zappin supervised visitation, granted a five-year stay-away order of protection in Comfort's favor, and required Zappin to pay child support. *See Zappin v. Comfort*, 65 N.Y.S.3d 30 (N.Y. App. Div. 2017) (affirming custody decision), *appeal dismissed*, 102 N.E.3d 1056 (N.Y. 2018). On appeal, the custody decision was affirmed in all respects. *Id.*

With Comfort's claim for attorneys' fees the only remaining issue in the divorce action, Justice Cooper recused himself, noting that in the interim, Zappin had filed three federal lawsuits against him; filed two complaints against him with the New York State Commission on Judicial Conduct, both of which were dismissed as being without merit; and created at least two websites aimed at "smearing [him]."  Doc. 70 at 3 (internal citations omitted).  Justice Cooper also noted Zappin's "venomous conduct" in sending a "disturbing" email to Justice Cooper's son and posting a fake online review of a course taught by his son, which stated in part that the instructor's "father is corrupt New York mobster Judge Matthew Cooper."  *Id.* (internal citations omitted).

### b.  Zappin's Disbarment

Based on Justice Cooper's findings, the Attorney Grievance Committee ("AGC") of the Appellate Division, First Department, charged Zappin with professional misconduct.  The charges were approved by Ernest J. Collazo, an attorney in private practice who served as volunteer chairman of the AGC, and were prosecuted by staff attorney Kevin M. Doyle under the supervision of chief attorney Jorge Dopico.  On October 17, 2016, the First Department found that Zappin had violated New York Rules of Professional Conduct §§ 3.1, 3.3(a)(1), 3.3(a)(3), 3.3(f)(2), 8.4(c), 8.4(d), and 8.4(h).  *See Matter of Zappin*, 73 N.Y.S.3d 182, 186 (N.Y. App. Div. 2018) (citing 22 NYCRR 1240.8 [b] [2]).  The court based its findings of misconduct on Justice Cooper's determinations that Zappin:

> had repeatedly perpetrated acts of domestic violence against his wife; had testified
> falsely at a custody trial; had knowingly introduced falsified evidence during the
> proceedings in the form of altered text messages; had presented misleading
> testimony through his expert witnesses; had . . . engaged in acts that repeatedly
> demonstrated disrespect for the court and counsel, by, inter alia, flouting the
> judicial directives of three judges . . ., setting up a fake website about the attorney
> for the child by registering her name as a domain name and posting derogatory
> messages about her on it, and baselessly filing a disciplinary complaint against a
> court-appointed psychiatric expert witness.  Additionally, the Supreme Court
> found that [Plaintiff] had sent text messages to his wife, an attorney, threatening
> her with loss of her license to practice law and professional ruin; had made
> grossly offensive remarks during cell phone conversations with his then three-

> month-old son in which he baselessly accused his father-in-law of being a child
> sexual abuser who could harm the child; had engaged in frivolous and abusive
> litigation against his wife, her parents, and her attorneys; and had attempted to
> publicly defame the attorney for the child.

*Id.* at 183–84.

The First Department referred the disciplinary matter to a referee to recommend an

appropriate sanction. *Id.* at 187. After a hearing, the referee recommended disbarment, citing

Zappin's "lack of remorse and evident lack of respect for the judicial process [as] serious

aggravating factors." *Id.* at 184–8. On March 8, 2019, the First Department ordered Zappin

disbarred "to protect the public, maintain the honor and integrity of the profession, or deter

others from committing similar misconduct[.]" *Id.* at 188. That decision held that disbarment

was amply justified because Zappin had had a full and fair opportunity to litigate the findings

made in the custody trial. *Id.* Based on Zappin's disbarment in New York, he was also disbarred

the District of Columbia in 2019, and in West Virginia in 2021. *See* Doc. 69-2.

### c. The November 2, 2016 Incident

Zappin alleges that on November 2, 2016, while he was walking in lower Manhattan, he

passed Justice Cooper, who purportedly approached Zappin and spat on him ("the November 2

incident"). Doc. 33 ¶ 14. That day, Zappin filed a police report at the New York Police

Department's First Precinct. *Id.* ¶ 17. Zappin alleges he "never once requested that the NYPD

or the District Attorney's Office prosecute [Justice] Cooper," but instead simply wanted to

"document what happened." *Id.* ¶ 18. At the time of the alleged incident, Justice Cooper was

still presiding over the divorce action and was considering several post-judgment motions. Doc.

70 at 15; Doc. 33 ¶¶ 26-27.

After an investigation of the November 2 incident by Lauren Liebhauser, investigator of

the Manhattan District Attorney's Office, Zappin was arrested on March 28, 2017, and arraigned

on March 29, 2017, in New York Criminal Court on a charge of falsely reporting an incident in

4

the third degree in violation of N.Y. Penal Law § 240.50.3(a), a Class A misdemeanor.[1]  *See*

Docs. 43-10, 43-11.  On September 19, 2017, Zappin pleaded guilty to one count of disorderly

conduct under N.Y. Penal Law § 240.20(1), a violation, in satisfaction of the charge.  *See* Doc.

43-13.

### d.  Zappin's Lawsuits

Since the issuance of the sanctions decision in 2015, Zappin has filed numerous actions

challenging Justice Cooper's rulings in the divorce action, contesting his disbarment, and

accusing Justice Cooper of wrongdoing in connection with the November 2 incident and

Zappin's resulting arrest and criminal prosecution.  Specifically, Zappin has filed at least eight

civil actions in the Southern District of New York, naming Justice Cooper as a defendant in six

of them, and also has filed one civil action in the Southern District of West Virginia.

In addition to the federal actions, Zappin has also filed five actions arising out of the same

events in the New York Supreme Court, one in the New York State Court of Claims, and one in

West Virginia state court.  Zappin named Justice Cooper as a defendant in four of the five matters

he filed in New York State Supreme Court.

### i.  Federal Actions

Zappin has filed at least nine federal actions arising out of the divorce action and its

consequences, including his disbarment and the November 2 incident.  First, on July 27, 2016,

Zappin filed suit against Justice Cooper, seeking to hold him liable for transmitting a judicial

opinion in the divorce action that allegedly contained false, malicious, or defamatory statements

about him to purportedly unauthorized recipients.  *See Zappin v. Cooper*, No. 16 Civ. 5985

(KPF) ("Federal Action 1"), Doc. 1.  Zappin asserted a number of claims including defamation,

intentional infliction of emotional distress, and tortious interference with prospective economic

advantage.  *See id*.  On November 8, 2016—six days after the November 2 incident—Zappin

amended his complaint to allege that Justice Cooper spat on him on the street, and cited the

---

[1] According to the criminal complaint, a review of video footage revealed that while Justice Cooper and Zappin did pass by each other, they did so "without any encounter or interaction of any kind."  Doc. 43-9 at 1–2.

November 2 incident in support of his claim alleging intentional infliction of emotional distress.
*See* Federal Action 1, Doc. 26 ("First Amended Complaint" or "FAC").

On February 2, 2018, Judge Failla dismissed Zappin's FAC with prejudice, finding his
claims barred by collateral estoppel.  *See* Federal Action 1, Doc. 57.  Zappin then moved for
reconsideration and also wrote that he intended to file a motion to request that Judge Failla
recuse from the matter.  Federal Action 1, Docs. 59, 63.  Zappin never filed his motion for
recusal, and Judge Failla denied his motion for reconsideration.  Federal Action 1, Doc. 67.
Several months after Judge Failla denied Zappin's motion, he wrote that he intended to file a
motion requesting document discovery from Judge Failla to "determine the extent of [her]
conflict of interest" and seek her disqualification.  Federal Action 1, Doc. 71 at 1.  Judge Failla
declined to produce any documents, writing there is "no basis for discovery from this Court[.]"
Federal Action 1, Doc. 72 at 4.

Next, Zappin filed two federal actions relating to allegedly defamatory statements made
in articles reporting on his divorce proceedings, both of which were assigned to Judge Failla as
related to his earlier-filed federal suit:  *Zappin v. Daily News, L.P.*, No. 16 Civ. 8762 (KPF)
("Federal Action 2") and *Zappin v. NYP Holdings, Inc.*, No. 16 Civ. 8838 (KPF) ("Federal Action
3").  He filed Federal Action 2 on November 10, 2016, against Daily News LP and Justice
Cooper.  And he filed Federal Action 3 on November 14, 2016, against NYP Holdings Inc.,
reporter Julia Marsh, and Justice Cooper.  Zappin voluntarily dismissed both actions against
Justice Cooper.  *See* Federal Action 2, Doc. 21; Federal Action 3, Doc. 21.

On August 9, 2017, Judge Failla dismissed Federal Action 2, finding the article at issue
was a "fair and true report" of the divorce proceedings and related judicial documents and was
not defamatory.  *See* Federal Action 2, Doc. 32 at 21.  And on March 26, 2018, Judge Failla
dismissed Federal Action 3 for the same reason.  *See* Federal Action 3, Doc. 46 at 15, 21–22.  In
Federal Action 3, Zappin again requested document discovery from Judge Failla, *see* Doc. 52,
and she again declined to produce any documents.  *See* Federal Action 3, Doc. 53.

On November 14, 2017, Zappin brought another federal action, and amended his complaint shortly thereafter, on November 20, 2017.  *See Zappin v. Doyle*, No. 17 Civ. 8837 (KPF) ("Federal Action 4"), Docs. 1, 28.  Broadly speaking, his 375-page complaint alleged constitutional violations and common-law tort claims stemming from his divorce proceedings and related criminal and disciplinary matters.  *See id.*  Zappin named as defendants Collazo and Doyle—volunteer chairman and prosecutor, respectively, of the AGC; New York State Justices Deborah Kaplan, Ronaldo Acosta, and Peter Moulton; Justice Lawrence Marks, Chief Administrative Judge for the Office of Court Administration in the New York Unified Court System; Robert Tembeckjian, Administrator and Counsel of the New York Commission on Judicial Conduct; Justice Cooper; Liebhauser; and Manhattan District Attorney Cyrus Vance. *See id.*  Zappin voluntarily dismissed Justice Cooper, Liebhauser, and Vance on April 6, 2018. Federal Action 4, Doc. 93.

In November and December 2017, Zappin filed a number of letters and motions in Federal Action 4 seeking a temporary restraining order, *see* Docs. 37, 51, and preliminary injunction, *see* Docs. 29–31, to halt the attorney disciplinary proceeding against him in state court.  Judge Failla denied these applications.  *See* Federal Action 4, Docs. 49, 54, 81.

On April 10, 2018, Judge Failla dismissed Federal Action 4 with prejudice as a sanction for Zappin's "persistent disregard of [the Court's] orders."  *Zappin v. Doyle*, No. 17 Civ. 8837 (KPF), 2018 WL 2376502, at *5 (S.D.N.Y. Apr. 10, 2018), *aff'd*, 756 F. App'x 110 (2d Cir. 2019).  Specifically, Judge Failla found Zappin repeatedly ignored Court-imposed deadlines and flouted multiple Court orders "over a period of months and with abiding disdain for the Court and its orders."  *Id.* at *6–8.  Judge Failla noted "the Court has no reason to believe that [Zappin] will ever view this Court's' orders and deadlines as binding on him."  *Id.* at *6.  As such and because neither a monetary sanction nor professional discipline would deter Zappin's conduct, Judge Failla found:

> [T]he Court does not believe that it can afford Plaintiff his right to be heard on the merits without doing considerable violence to the Court's right to have its orders followed and to the State Defendants' rights to know the claims brought against

them and to mount a fully-informed defense.  To control the cases that come before it, the Court is given broad discretion to issue orders and, when those are disobeyed, to impose sanctions.  Having no ability to ensure compliance with the former going forward, the Court now resorts to the latter.  To be clear, it does not do so lightly.  The Court has admonished Plaintiff about the importance of abiding by its orders; it has given Plaintiff several "second chances"; and it has tried without success to construct an alternative to this dismissal.  On the record before it, the Court is confident that giving further opportunities to Plaintiff to abide by its orders will be met only with Plaintiff's continued misconduct.  This case is dismissed.

*Id.* at *9.

On April 26, 2019, and November 14, 2019, Zappin filed two more federal actions in this District, which were assigned to Judge Schofield: *Zappin v. Collazo*, No. 19 Civ. 3781 (LGS) ("Federal Action 5") and *Zappin v. Dopico*, No. 19 Civ. 10573 (LGS) ("Federal Action 6").  He brought these related actions against Collazo and Dopico, the chief attorney of the AGC.  Judge Schofield dismissed both cases in a single opinion on September 22, 2020.  *See* Federal Action 5, Doc. 61; Federal Action 6, Doc. 37.  Judge Schofield found Zappin's case against Collazo was barred by *res judicata*, and dismissed Zappin's case against Dopico on standing and *res judicata* grounds as well as for failure to state a claim.  As Judge Schofield wrote, Zappin "successively violated Court Orders," including by missing a number of Court-imposed deadlines, and "cost both Defendants and the Court needless time[.]"  Federal Action 5, Doc. 58; Federal Action 6, Doc. 29.  Judge Schofield concluded that Zappin's conduct "has been dilatory and disrespectful of Court Orders and the parties' time."  *Id.*  She advised that any further failure to comply would result in sanctions.  *Id.*

Zappin filed the instant action on March 31, 2020.  *See Zappin v. Cooper*, No. 20 Civ. 2669 (ER) ("Federal Action 7").  On August 17, 2020, the Court directed service upon Justice Cooper and Liebhauser and dismissed the action *sua sponte* as to Doyle and two other defendants.  Doc. 18.  The amended complaint, filed November 18, 2020, asserts four claims under 42 U.S.C. § 1983:  (1) abuse of process, (2) conspiracy to abuse process, (3) retaliation for Zappin's criticism of Justice Cooper, in violation of his First Amendment rights, and (4) conspiracy to retaliate.  *See* Doc. 33.

Specifically, Zappin alleges Justice Cooper used his position on the bench to "induce and instigate" the Manhattan District Attorney's Office to bring a "bogus" investigation and prosecution of a "wholly baseless and frivolous misdemeanor criminal charge;" that he did so to retaliate against him; and that Liebhauser conspired with Justice Cooper. *Id.* ¶¶ 1,7.  In other words, Zappin claims his arrest and prosecution for filing a false police report resulted from a conspiracy to "manufacture a retaliatory criminal case" against him. *See id.* ¶ 20.

Justice Cooper moved to dismiss the action and to strike certain allegations from the amended complaint.[2]  *See* Doc. 41.  The motion set forth four grounds for dismissal:  the statute of limitations; *res judicata* based on dismissal with prejudice of Federal Action 1; absolute judicial immunity; and failure to state a claim.  *See* Doc. 42.  Justice Cooper's motion to dismiss was fully submitted on March 9, 2021, *see* Doc. 54, and on May 26, 2021, Justice Cooper moved for a filing injunction.  *See* Doc. 68.  The motion for a filing injunction was fully submitted on July 9, 2021.  *See* Doc. 90.

In February and March 2022, Zappin filed two more federal suits—despite asserting in his opposition to Justice Cooper's motion that he had no intention of filing any new lawsuits.  *See* Doc. 83 at 22–23.  On February 16, 2022, Zappin brought suit against Doyle, Dopico, and others in the Southern District of West Virginia, challenging his disbarment in West Virginia.  *See Zappin v. Ramey*, S.D. W. Va., No. 3:22 Civ. 00080 (RCC) (CAE) ("Federal Action 8").  And on March 15, 2022, Zappin brought suit in this Court against Justice Cooper, Doyle, and David Evan Schorr, who represented Zappin in part of his divorce proceedings, alleging claims of racketeering, fraud, tortious interference with parental rights, and abuse of process.  *See Zappin v. Schorr*, No. 22 Civ. 2034 (ER) (JLC) ("Federal Action 9").  Specifically, Zappin alleges that Schorr sought to undermine Zappin's position and defenses throughout the divorce proceedings in an attempt to harm and defraud him and that all defendants participated in a

---

[2] Justice Cooper's motion to dismiss was denied as moot pending the Court's resolution of Zappin's motion for leave to file a second amended complaint.

scheme to engineer Zappin's criminal prosecution and disbarment.  *See* Federal Action 9, Doc. 2 at 32–38.

### ii.  State Actions

Zappin has also filed a number of state actions relating to the divorce proceeding and its consequences.  *See* Doc. 69-3.  Specifically, in 2015, Zappin sued the State of New York in the New York State Court of Claims, alleging he was assaulted by a court officer during the divorce proceeding; after filing the claim and serving discovery demands and subpoenas, Zappin withdrew the claim.  *See Zappin v. State of New York*, Claim No. 126063.  Between 2017 and 2020, Zappin filed five actions in Supreme Court, New York County:  *Zappin v. Cooper*, No. 151862 (2017); *Zappin v. Comfort*, No. 152822 (2017); *Zappin v. Comfort*, No. 156083 (2018); *Matter of Zappin v. Office of Court Admin.*, No. 154785 (2019); *Zappin v. Cooper*, No. 154016 (2020).  *See* Doc. 69-3.  Justice Cooper is a named defendant in four of these state actions.

In one of these Supreme Court actions, *Zappin v. Comfort*, No. 152822, Zappin filed and served a summons with notice and thereafter sought discovery; but the court denied his motion and dismissed the action because Zappin failed to comply with Justice Cooper's demand that he serve a complaint.  *See* Doc. 70 at 7.  The remaining Supreme Court Actions, whether commenced by summons and complaint or summons with notice, were not served on Justice Cooper.  *See id.*

In 2018, Zappin also filed an action relating to his disbarment in West Virginia State Court.  *See In re Zappin v. Doyle*, Cabell Cnty. Magistrate Ct., W. Va., No. 18S-55.  Zappin later withdrew this action.  *See id.*

### iii.  Relief Sought in the Pending Motions

In sum, as set forth above, Zappin has filed at least sixteen suits relating to his divorce proceeding, subsequent disciplinary proceedings and disbarment, the November 2 incident, and his ensuing prosecution for filing a false police report, and he has named Justice Cooper as a defendant in at least ten of these cases.  As a result, Justice Cooper moved to enjoin Zappin from filing, without leave of the Court, any new civil actions in the Southern District of New York

against him, New York State, or any other state judge, official, or employee, arising out of Zappin's divorce action, the disciplinary proceeding that led to Zappin's disbarment, the November 2 incident, or his resulting arrest and prosecution. Doc. 70 at 1. The Court granted that motion and denied Zappin's motion for leave to file a second amended complaint on March 31, 2022. *See Zappin*, 2022 WL 985634, at *7–11.

Zappin thereafter moved for reconsideration of the Court's March 31, 2022, Opinion and Order. Doc. 120. Justice Cooper opposed that motion. Doc. 122. Zappin then moved for the recusal of the undersigned, Doc. 124, which Justice Cooper also opposed. Doc. 126. At a conference held on July 1, 2022, the Court granted Zappin leave to file late a reply brief in further support of his recusal motion by July 5, 2022. *See* Min. Entry dated July 1, 2022. However, Zappin failed to do so. Accordingly, the motions were deemed fully submitted as of July 5, 2022. *See id.*

## II.   LEGAL STANDARD

### A.  Motion for Reconsideration

Plaintiff moves for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure and Local Civil Rule 6.3.

A motion to alter a judgment under Rule 59(e) "may be granted 'only if the movant satisfies the heavy burden of demonstrating an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 10 F. Supp. 3d 460, 475 (S.D.N.Y. 2014) (quoting *Hollander v. Members of the Bd. of Regents of the Univ. of the State of N.Y.*, 524 F. App'x 727, 729 (2d Cir. 2013)). The Second Circuit has noted that it is "well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks and citation omitted).

Rule 6.3 of the Local Civil Rules for this District provides for reconsideration of a court's order on a motion only where the court has overlooked controlling decisions of law or factual matters that were "put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." *Mikol v. Barnhart*, 554 F. Supp. 2d 498, 500 (S.D.N.Y. 2008) (quoting *Greenwald v. Orb Commc'ns & Mktg., Inc.*, No. 00 Civ. 1939 (LTS), 2003 WL 660844, at *1 (S.D.N.Y. Feb. 27, 2003)); *see also* S.D.N.Y. Local Civ. R. 6.3. Under such circumstances, a motion for reconsideration may be granted "to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks and citation omitted). Local Rule 6.3 is "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Mikol*, 554 F. Supp. 2d at 500 (internal quotation marks omitted) (quoting *Dellefave v. Access Temps., Inc.*, No. 99 Civ. 6098 (RWS), 2001 WL 286771, at *1 (S.D.N.Y. Mar. 22, 2001)).

"The standards for relief" under Rule 59(e) are "identical" to those for motions for reconsideration under Local Civil Rule 6.3. *See Ramirez v. United States*, Nos. 05 Civ. 4179 (SAS), 07 Civ. 459 (SAS), 2013 WL 247792, at *1 (S.D.N.Y. Jan. 22, 2013) (internal quotation marks and citation omitted). "Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (quoting *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). "Where the movant fails to show that any controlling authority or facts have actually been overlooked, and merely offers substantially the same arguments he offered on the original motion or attempts to advance new facts, the motion for reconsideration must be denied." *Mikol*, 554 F. Supp. 2d at 500 (S.D.N.Y. 2008) (citing Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)).

Whether to grant or deny a motion for reconsideration is "within 'the sound discretion of the district court.'" *Premium Sports Inc. v. Connell*, No. 10 Civ. 3753 (KBF), 2012 WL

2878085, at *1 (S.D.N.Y. Jul. 11, 2012) (quoting *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)).

While *pro se* litigants' submissions "are held 'to less stringent standards than formal pleadings drafted by lawyers,'" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)), as a former attorney, Zappin is not entitled to the special solicitude usually granted to *pro se* litigants, *see Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[A] lawyer representing himself ordinarily receives no such solicitude at all.").

### B.  Motion for Recusal

A judge is required to recuse himself from "any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  When a judge's impartiality is questioned on bias or prejudice grounds, "what matters is not the reality of bias or prejudice but its appearance."  *Liteky v. United States*, 510 U.S. 540, 548 (1994).  That is, recusal is warranted if "an objective, disinterested observer fully informed of the underlying facts . . . [would] entertain significant doubt that justice would be done absent recusal."  *United States v. Yousef*, 327 F.3d 56, 169 (2d Cir. 2003) (internal quotation marks and citation omitted).

The showing of personal bias to warrant recusal must ordinarily be based on "extrajudicial conduct . . . not conduct which arises in a judicial context."  *Lewis v. Tuscan Dairy Farms, Inc.*, 25 F.3d 1138, 1141 (2d Cir. 1994) (internal quotation marks and citation omitted). And "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555 (citation omitted); *see Fulton v. Robinson*, 289 F.3d 188, 199 (2d Cir. 2002) (affirming denial of recusal motion filed in case by plaintiff where judge had ruled against him on all his motions and where plaintiff had "speculated that the judge may have been acquainted with [him]").  Moreover, because recusal "necessarily results in a waste of the judicial resources which have already been invested in the proceeding," *In re Int'l Business Machines Corp.*, 618 F.2d 923, 933 (2d Cir. 1980), a judge is "as much obliged not to recuse

himself when it is not called for as he is obligated to when it is," *In re Drexel Burnham Lambert, Inc.,* 861 F.2d 1307, 1312 (2d Cir. 1988).

## III.   DISCUSSION

### A.  Motion for Reconsideration

Zappin has failed to advance a basis on which the Court should reconsider its Mach 2022 judgment pursuant to Rule 59(e) and Local Rule 6.3.  *See Zappin*, 2022 WL 985634, at *1–12; *see generally* Doc. 121; Doc. 122.  Zappin's arguments can be summarized into two main points: (1) the Court's filing injunction is unconstitutional and beyond the Court's jurisdiction; (2) the Court must reconsider its decision as to Zappin's proposed amended complaint because his claims are not barred and amendment would not be futile.  Doc. 121 at 1–12.  The Court takes each argument in turn.

#### i.  Filing Injunction

In regard to his reconsideration request, Zappin merely asserts that the Court's filing injunction "was unjustified, unconstitutional and plainly exceeded [the] Court's jurisdiction." Doc. 121 at 11.  However, Zappin fails to "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader*, 70 F.3d at 257.

As the Court explained at length in its March 2022 Opinion and Order, the filing injunction is indeed warranted, given the applicable standard set out by the Second Circuit in *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986) and Zappin's history of vexatious, harassing, duplicative, and wasteful conduct before this Court and others.  *Zappin*, 2022 WL 985634, at *7–11.  As described herein and in the March 2022 Opinion and Order, Zappin has filed at least sixteen suits relating to his divorce proceedings, disbarment, encounter with Justice Cooper, and corresponding prosecution for filing a false police report.  In those cases, including the ones before this Court, Zappin has defied orders, failed to meet deadlines, and attempted to relitigate the same issues before different judges and court systems.  Indeed, even with respect to the instant recusal motion, he failed to file his reply brief, requested leave to file it late, was

14

granted leave, and failed still to file it.  *See* Min. Entry dated July 1, 2022; *see also* Doc. 134; Doc. 135.  This has imposed significant costs upon the defendants and the various courts in which Zappin has raised his claims.  *Id.* at *9.

As noted, the threshold for reconsideration of a prior judgment is high because of the strong interests of finality and conservation of scarce judicial resources.  *See Parrish*, 253 F. Supp. at 715.  And, simply put, Zappin altogether fails to show that the Court overlooked controlling authority or facts.  *Mikol*, 554 F. Supp. 2d at 500 (S.D.N.Y. 2008).  Accordingly, the Court will not reconsider its decision to grant Justice Cooper's motion for a filing injunction. *See Zappin*, 2022 WL 985634, at *7–11.

### ii.  Proposed Second Amended Complaint

Zappin's motion is also denied as to the Court's March 2022 conclusion that any amendment to his first amended complaint would be futile.  *Zappin*, 2022 WL 985634, at *12.

Zappin raises two main arguments in this regard:  *first*, the Court's basis for denying him leave to file a second amended complaint is flawed because it relies on caselaw regarding claims for false arrest and malicious prosecution; and *second*, his proposed claims are not barred by the applicable law.  Doc. 121 at 4–11; *see also* Proposed Second Amended Complaint ("PSAC"), Doc. 71-1 at 1–66.  In response, Justice Cooper argues that the Court properly denied Zappin's motion for leave to amend because the caselaw supports the Court's basis for denying leave, and Zappin's claims otherwise fail because they are vague, conclusory, unduly delayed, barred by the doctrines of absolute judicial immunity and *res judicata*, and are otherwise grounded in bad faith and prejudice.  Doc. 122 at 2–3.

The Court first turns to the standard for considering amended pleadings.  "Once the time for amending pleadings as a matter of course expires, 'a party may amend its pleading only with the opposing party's written consent or the court's leave.'"  *Tolliver v. Lilley*, No. 12 Civ. 971 (DAB) (KNF), 2016 WL 5793998, at *2 (S.D.N.Y. Sept. 19, 2016) (quoting Fed. R. Civ. P. 15(a)(2)).  The court should "freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, leave should be denied when "there is evidence of undue delay, bad faith,

15

—

undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  The Court must thus decide whether granting leave to amend would advance or impede justice.

In its March 2022 Opinion and Order, the Court denied Zappin's motion on the basis that "any amendment would be futile." *Zappin*, 2022 WL 985634, at *12.  It relied on various considerations to reach that conclusion.

First, the Court considered that all nine of Zappin's proposed claims related to the criminal charge that resulted in his arrest for filing a false police report—a charge that Zappin ultimately pleaded guilty to.  *Id.* at *11.  Accordingly, because the claims stemmed from "Zappin's overarching allegation that Justice Cooper and Liebhauser conspired to bring false charges against him as a means of retaliating against him," the Court considered extensive caselaw providing that a plaintiff *cannot* maintain a § 1983 action for false arrest and/or malicious prosecution where he has pleaded guilty in connection with the underlying conduct. *Id.*; *see also Feurtado v. Gillespie,* No. 04 Civ. 3405 (NG) (GLB), 2005 WL 3088327, at *4 (E.D.N.Y. Nov. 17, 2005) (holding that a false arrest claim under Section 1983 is barred when the plaintiff pleaded guilty to the underlying or lesser charge); *McLaurin v. New Rochelle Police Officers,* 439 F. App'x. 38, 39 (2d Cir. 2011).

Additionally, as Justice Cooper points out, various courts in this Circuit have held that probable cause also negates abuse of process claims as a matter of law.  *See, e.g.*, *Sforza v. City of New York*, No. 07 Civ. 6122 (DLC), 2009 WL 857496, at *16 (S.D.N.Y. Mar. 31, 2009) ("[T]he presence of probable cause negates a claim for abuse of process . . . ."); *see also Tuccillo v. Cnty. of Nassau*, 723 F. App'x 81, 82 (2d Cir. 2018) (noting that New York state courts have held that probable cause can defeat abuse of process claims).  As those courts have reasoned, where there is probable cause for the prosecution of a crime, there is no "use of process that has as its direct object the achievement of an improper and ulterior 'purpose or objective.'" *Pinter v. City of New York*, 976 F. Supp. 2d 539, 568–69 (S.D.N.Y. 2013) (quoting *Savino v. City of New York*, 331 F.3d 63, 78 (2d Cir. 2003).  In other words, where there is probable cause for a

criminal prosecution, and particularly, where the prosecution results in a guilty plea, a plaintiff's subsequent abuse of process claims are futile.[3]

Furthermore, the Court's March 2022 Opinion and Order detailed the extensive evidence of bad faith, undue delay, futility, and undue prejudice suffered by the defendants—all of which were caused by Zappin's continuous and repetitive efforts to bring actions against Justice Cooper and other New York State officials.  *Zappin*, 2022 WL 985634, at *1–12; *see also Milanese*, 244 F.3d 104, 110 (2d Cir. 2001).  That evidence, which amounts to abusive and vexatious behavior, further supports the Court's decision to deny Zappin leave to file yet another complaint for the same series of underlying events.  *See Milanese*, 244 F. 3d at 110.

Zappin has thus failed to demonstrate that the Court's judgment ought to be reconsidered under the applicable standards.  He has not pointed to overlooked authorities or facts "that might reasonably be expected to alter the conclusion reached by the court."  *Shrader*, 70 F.3d at 257; *Mikol*, 554 F. Supp. 2d at 500.  Accordingly, the Court will not reconsider its decision to deny Zappin's motion for leave to file a second amended complaint.  *See Zappin*, 2022 WL 985634, at *11–12.

### B.  Motion for Recusal of the Undersigned

Zappin's motion to disqualify the undersigned is also denied.  In his motion, Zappin simply does not raise any facts suggesting that the Court's impartiality might be reasonably questioned in this case.  28 U.S.C. § 455(a).  At best, Zappin makes self-serving generalizations about the validity and constitutionality of the Court's prior rulings, Doc. 125 at 3; however, a judge's prior rulings are not a valid basis for recusal, *see Liteky*, 510 U.S. at 555 (citation

---

[3] While it is true that there is Second Circuit caselaw concluding the contrary, those cases stem from 1963 and 1975.  *See Weiss v. Hunna*, 312 F.2d 711, 717 (2d Cir. 1963); *Lodges 743 and 11746, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Aircraft Corp.*, 534 F.2d 422, 465 n.85 (2d Cir. 1975).  And the Second Circuit has declined to endorse the reasoning underlying those cases as recently as 2015 and 2018.  *See Mangino v. Inc. Vill. Of Patchogue*, 808 F.3d 951, 959 (2d Cir. 2015) (noting that following *Weiss* and *United Aircraft Corp.*, the Second Circuit has "lent support" to the interpretation that probable cause is a complete defense to an abuse of process claim because it is an "excuse or justification") (internal citations omitted); *Tuccillo*, 723 F. App'x at 82 (declining to conclude that probable cause is not a complete defense to an abuse of process claim).

omitted).  Zappin otherwise includes a broad range of irrelevant and repetitive grievances about the many cases, sanctions, and investigations stemming from his divorce proceedings, and other matters outside the context of these proceedings.  *See* Doc. 125 at 2–52.  But those grievances do not call into question the Court's impartiality in assessing Zappin's claims.  *See* 28 U.S.C. § 455(a).  Here, "an objective, disinterested observer fully informed of the underlying facts" would not entertain significant doubt that justice will be done absent the Court's recusal.  *Yousef*, 327 F.3d 169 (2d Cir. 2003).

Additionally, as Justice Cooper notes, Zappin's motion is untimely.  *See* Doc. 126 at 16–20.  This case has been pending since March 2020, and Zappin moved for recusal on April 25, 2022, based on events dating as far back as December 2016, August 2020, and May 2021.  *See, e.g.*, Doc. 125 at 20–21, 27–28.  Because parties must raise their disqualification arguments "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim," the Court agrees that Zappin's motion is also untimely.  *Weisshaus v. Fagan*, 456 F. App'x 32, 34 (2d Cir. Jan. 19, 2012).

There is no legitimate basis for Zappin's untimely disqualification arguments.  His recusal motion is therefore denied.

## IV.    CONCLUSION

For the reasons set forth above, Zappin's motion for reconsideration of the Court's March 2022 Opinion and Order, Doc. 120, and his motion for the recusal of the undersigned, Doc. 124, are DENIED.

Zappin is enjoined from filing, without leave of Court, any new actions in the Southern District of New York against Justice Cooper, the State of New York, any New York State entity or agency, or any other current or former New York State judge, official, or employee arising out of his divorce proceedings, disciplinary proceedings, encounter with Justice Cooper, or corresponding arrest and prosecution.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 120 and 124.

It is SO ORDERED.

Dated:    February 6, 2023
          New York, New York

_____

Edgardo Ramos, U.S.D.J.